The last Rd case on the calendar for today is number 21-2445 Schwartz v. City of New York. Arthur Schwartz, Advocates for Justice, Chartered Attorneys, Counsel to the Appellant Jacob Schwartz I've thought a lot about how to start this argument and given that the city commenced its brief with a sentence that had absolutely no relationship to what was going on in this case, I want to be clear that this is not a case about how to punish somebody who, in his home, or they alleged without any support at work, viewed pornography. That's not what this is about. The city led with that sentence because there's no merit to their position in this case. This is a case about an employee of the city who worked actual hours. He worked the hours. This is not a bonus. It's not a benefit. He worked 457 hours that instead of taking the pay, he put it in a comp program so that he could use it for time off later, paid time off later. And he wasn't paid that money. And that's what this case is mostly about. Secondarily, 50 of those 457 hours involved work more than 40 hours in a week, so there's an FLSA claim. He wasn't paid that money but he was entitled to the money because the practice of the DDC was to pay it out upon somebody's termination. Not just the practice. It's in their employment manual that is fully set forth in the record. It wasn't just a practice. Right. It's in the manual. The manual says that there's an expiration on it, but you're saying the agency had waived that expiration that's in the manual. The agency had waived. I suppose there must be some number of hours that are not expired, even if that were an enforceable provision, the expiration. Right. But the complaint we're now dealing with on that, a motion to dismiss, the complaint said that he had been advised that the time would not expire. He could use it even when he left the agency. This is a motion to dismiss. There is a record, fortunately, unfortunately, which the city keeps bringing into the motion to dismiss, where, in fact, the HR director said that people were allowed to maintain the money until they left the agency, whether it was retirement, leaving, fired, whatever. The case has two types of claims. One was that it violated the agency pronouncements in its own book, which we assert was enacted pursuant to the two, as we said, not just pursuant to one city regulation, but pursuant to a statute that was the state civil service statute, which allowed the city to come up with personal rules and regulations, which then the agency then created its own 500- So the New York City Administrative Code says hours set by statute, and you're saying that this is essentially set by statute because the manual is authorized by statute. The manual is authorized by statute, and I believe it's paragraph 17 of the complaint. We describe how this statute authorized this regulation, which authorized the agency to do what it did. And is that what the New York City Administrative Code means when it says set by statute? Is that what it means set by statute? The district court here thought that set by statute just means that a statute has to lay out the hours requirements, right? So do we have some time for the proposition that a statute authorizes the issuance of a regulation or a manual and that that still would be covered? The civil service law allowed the agency, allowed the city agency to create a, and the personal rules and regulations, which were pursuant to state law, allowed the agency to develop a pay program, which it, so it goes back to state law authorizing the New York City to create personal rules. And I think that's probably how most agencies set their personnel rules. There's some general authorization and they set their own. I can't imagine the New York City Council is setting overtime rates. No, New York City Council hasn't. They haven't set it because it, but the agency sets it pursuant to a set of citywide regulations which is enacted pursuant to state law that they're allowed to do. And I don't think there was any assertion here that, in fact, that was the policy, the practice, the procedure, a very detailed procedure shown in paychecks, pay stubs, even his last pay stub showed 457 hours of comp time. If this was not just a gift, it was not just someone acting ultra virus, this was a policy that has existed for many, many, many, many, many years. Even if it wasn't, pursuant to the Nakahata case, which I found in researching this, it said that there could also be a claim for, or a breach of oral contract, there could also be a claim for unjust enrichment. So we included those claims in the complaint and that's where the district court, the magistrate relied on the Finley case to say you can't bring such a claim except within four months of when you're deprived of the pay. The city concedes, because the Finley case didn't say that, which was in this court. The city concedes in its brief, they say on page, they said at best it's unclear, at best it's unclear whether it applies. If something at best is unclear, it certainly shouldn't be the law that anybody relies on in determining what goes on. Sometimes the best law we have to rely on is unclear, but I guess your argument would be, in this case, your client is not seeking reinstatement. He's just seeking back pay or compensation for hours he actually worked and it's not related to reinstatement. Exactly, and there is a New York State Court of Appeals decision in Gerber that says very clearly that where a claim for wages is not accompanied by a request for reinstatement, that it can be brought as a plenary action. Plain as day, that's what Gerber says and that's what we asserted in the court below and the court ruled otherwise. Can I ask just to sit down about the FLSA claim? So your client said in his deposition that he built the tracking system from the ground up. Doesn't that mean he had a lot of discretion about how it should be put together? But that section, the regulations in the FLSA that create the policymaking decision, talk about an employee whose primary duty includes exercise of discretion and independent judgment with respect to matters of significance. He took data, and the city didn't put his supervisor or his next person up the chain's testimony into evidence. He took data, he took an Excel program, he worked with IT to massage that program to give the reports that the city wanted. That's not an exercise of discretion. He was not a policymaker. He was an analyst. I represent thousands of analysts in this city. So the regulations that talk about what's directly related to management or general business operations say work directly related to management or general business operations include, but it's not limited to, work in functional areas such as tax, finance, accounting, budgeting, auditing, insurance, quality control, purchasing, procurement, advertising, all these things. I mean quality control and so on seems like it's applicable here. So it's not just people who are managing the company. It's people who are doing programmatic work that aids in the management of the company, right? But then every analyst in this – In fact, the regulations I think also say at one point that an administrative assistant to somebody who manages the company, if that person has some discretion, would also qualify. But then – So it doesn't have to be a high-ranking person, does it? It has to be somebody who is making decisions on policy. If that applied to an analyst – he was an analyst. As I said, I represent thousands of analysts in this city who have to input data, decide which data to put in, to have to decide how the program should be massaged so that it gives out the report that their higher-up wants to see. You know, how many homes have we built today? What's the difference between – I represent people in the subway system. How many people are riding the train now as opposed to one year ago? Crime levels. Whatever it is, they have to take the data and put it in. And they have to figure out how to put it in so that it creates a report that answers the question in that manner. If he – if that makes you a policymaker, then anyone with an analyst title in the city of New York, and there are 7,000 or 8,000 of them, would become not eligible for overtime. And that's just not the – Your argument is not that he just didn't exercise discretion. Your argument is that he didn't even engage in work directly related to management or general business operations. Actually, our argument here is this is a summary judgment decision, and there are factual arguments that can be made on both sides. And in all the CINO and many other decisions that this court has, if the facts are viewed most favorably to the plaintiff, this should have been a trial, not a determination. Are they factual arguments? I took you just to be talking about basically a legal dispute. So you're saying that, well, he is doing – he is entering the data and manipulating the spreadsheets in order to generate certain reports. And you're saying that kind of work doesn't qualify as related to management or business operations. I'm saying that if – Like is it disputed the kind of work he's doing? Yes, there's a dispute as to the extent of his authority, the extent of his discretion, the extent of – Okay, so there's a dispute about the extent of discretion. So I guess just in terms of the kind of work he's doing, he is designing a system where you can input the data. No, he didn't design the system. He worked with IT. That's what it says in the – and his supervisor as well, Mr. Hock. He worked with IT to take an accrued Excel program and create whatever he needed, you know, columns he needed. I don't do this stuff. He needed to come out with a report. He worked with somebody and then he generated the reports. And if somebody would say, can we see what would happen if you added another thousand homes to this project? Right, he'd figure out how to arrange the data to generate the reports. In Excel. He didn't write Excel. He didn't write the program. He didn't make the program. But, I mean, I take it it's a relatively complicated system of Excel workbooks that interact with each other. So I understand. So he had to – He might argue about whether that is making a program or not. But what he is doing is he is coming up with some kind of system, which is in Excel, where you can input the data and generate these reports based on the interests of the policy makers. And there was different testimony. His direct supervisor, Mr. Hock, the next guy up the chain, Mr. Kenney, basically talked about him as somebody who put the data in that we told him to put in and produced the reports that we told him to produce. There was other testimony that went both ways. Ms. Flaherty, I believe, who was the next person up the chain, you know, about how important his reports were. Okay, so we know the nature of the work is making these reports. But you're saying the nature of his discretion is a factual dispute. So it might be that he's just doing the ministerial thing, which is inputting the data that people tell him to input. Or he might be doing something that involves more discretion about how the spreadsheets interact and how the data interacts to generate a report. Right? That's the dispute you're saying. There's a factual dispute, and the regs talk about it. So you're saying that if he made inferences in his favor, it could be that he was just a data inputter and he would just input data that people told him to input and didn't have any discretion over what it looked like. Which is what his immediate boss said in his deposition, which the city decided not to even cite it. They had cited testimony of someone two levels up the chain. His direct supervisor basically characterized him as someone who inputted data, what we told him to do. Now, didn't he say in his deposition that- Oh, he said, right. That there was not a system, like he put together this network of spreadsheets in order to generate the reports. That as a computer, someone who knew how to work with computer programs, with Excel, he put together the spreadsheets that he was being asked to produce. But as I said, his boss described him in a far less grandiose way than he described himself. He added some grandiosity. And a lot of what the district court relied on was his resume, that he put on his resume that he did some of this stuff. It was clearly a factual issue. It shouldn't have been decided on a motion for summary judgment. This court has many decisions. I cited Olaceno because I argued it here in this court. It was a wonderful decision. Where the court said, if you don't view the evidence most favorably to the plaintiff or the non-move ant, that it's inappropriate. If there's a factual dispute, that the court should send it to trial and not- There are ways of looking at this evidence that would not fit him into that slot. I think I get that argument. Now, is it in your view undisputed that that was his primary role at the DDC? His only role, that was all he did. And then he took the reports and went to meetings and people had questions about the reports. But that was his job. He was an analyst. That's what analysts do. Thank you. Thank you, counsel. You've reserved a couple minutes. We'll hear from the city. Good morning. May it please the court. Lorenzo DeSilvio on behalf of the city. So in this case, there's no dispute that DDC did not pay out the overtime that Schwartz chose to bank his comp time rather than taking it as straight pay on his paycheck. But the problem for Schwartz is this. He's looking for a legal means to remedy the wrong he's alleged, but he hasn't identified a cognizable one. I'll begin with the state law claims, because that's where Mr. Schwartz's counsel started. And even if the court reaches them, because the city submits that you should reach the FLSA claim first. It's the only reason we're in federal court. It's a fact-rich claim. It's the only claim that went to discovery. Even if the court reaches the state law claims, they still suffer- So you're suggesting we just leave it there? I'm suggesting that the court could decline to exercise supplemental jurisdiction once the only reason- Well, the district court could decline to exercise supplemental jurisdiction and not enter a judgment on those claims. But the district court here didn't do that. The district court here evaluated those claims and dismissed them. I understand, Your Honor. And if you want to address the claim, they still fail on the merits. Because the ad code claim, as you pointed out, Judge Menasche, the legislature could have written a rule saying anyone denied overtime provided- anyone who has to work beyond their work week as set by statute or contract. But it said work week set by statute. But, I mean, is it not- it seems that it is not an implausible reading to say that if a statute authorizes the agency to set its policies for overtime, that that is still overtime error set by statute because it's authorized by statute. Usually regulations and other sub-statutory documents that come from agencies that are authorized by statute are elaborations of the statutory requirements. So do we know how the state courts apply this regulation? It seems like we don't have a lot of authority for that. We don't, and Schwartz has offered no argument on that front. It does seem to me that probably the way most government agencies work is a version of this. There's a statute that authorizes the agencies to adopt workforce policies, and they do it through some kind of guidance or regulation. Sure, and if they said, you know, the work week is set by something authorized by statute, that would be a different statute than the one we have here. If it's set by statute, we should understand it to- Yes. I mean, are there any- Work week set by- Are there any statutes? First of all, when the city council passes a statute, do we call it a statute or do we call it an ordinance? I believe we call it a statute, and then regulations would be the level below that. Okay, so has the city council passed any statutes that set the work week for city employees at any of the agencies? I believe that there are such statutes. I'm not aware of such statutes specifically applicable to the city of New York and its workforce. But here, our argument is a textual one, which is the legislature used the language that it uses. It must have meant not to include something authorized by statute, but rather the work week has to be set by statute. And the two common law claims fail on the basis of the CBA, and there's two reasons why this case is distinguishable from the Nakahata case, which Schwartz relies on heavily on reply, likely because he has no answer as to why he can proceed with those claims if the CBA applies to him. First of all, unlike the claim in Nakahata, his claim for payment of comp time is grounded in his CBA. As Kenny, one of his supervisors, testified to at 538 of the record, this is something that is a creature of contract. It only exists in the CBA, so thus his complaint necessarily relies on this document, which he hasn't attached. But there's a second reason why Nakahata— I'm sorry, the entitlement to comp time only exists in the CBA? It's from the CBA that exists. It's a contractual right. It's not something statutory leaving aside the FLSA. But it is also in the manual that governs employees at the DDC, right? That's correct, but because the CBA— There were no CBA. If they just hadn't concluded a CBA, but they did have that manual, you still would have a contractual claim against the DDC. That's right, but the CBA—the reason why you can look at the CBA here is not only because it's critical to the cause of action here, the contract-based causes of action, but also because in Nakahata, the court said, well, you just can't do this on a motion to dismiss, but you can convert it to a motion for summary judgment. And here we've had summary judgment, and contrary to the tune that Schwartz sings on his reply brief, on page 595 of the appendix, the city said in its 56.1 statement, here's the CBA that covers you. It's dated 1994 to 2001. It's Exhibit K or J to the Declarations Board of Summary Judgment. Schwartz said, admit it. He never said that that wasn't the agreement. And even if this panel has any concerns that agreement in 2017 somehow wouldn't have a grievance procedure, wouldn't address comp time, or wouldn't say you have to use it within four months, you can take judicial notice of the up to 2021 agreements, which are available on the city's website, and also multiple labor unions if you just Google city-wide agreement. But this court didn't address the CBA at all, right? In terms of the dismissal of the motion to dismiss, that's right. That's right. But I think... I don't think you should, because we are in the land where without conversion into a motion for summary judgment, you can take cognizance of something that necessarily underpins his contract claim. That's the CBA. And second of all, it's a bit of a willful one. If it is a CBA, it would affect the claim. But in the absence of a CBA, it could be based on the policies as outlined in the manual of the CDC, right? It could be, but he is relying on the CBA because that is the highest level of contract that would govern here, would trump the employment manual because it's city-wide, and it does comprehensively address overtime rights in the terms of comp time. It has a grievance procedure that outlines, and it says that you have to take it within four months. If I could take a step back, you're not defending the district court's conclusion that this should have been brought as an Article 78? I believe that Schwartz has the better reading that he was not required to bring an Article 78 under these circumstances, but we push back on his contention that even though he filed suit two years after he got his last paycheck, evidently the four-month clock didn't even start running. We don't think a reasonably diligent plaintiff... And so that's why you're urging us to go to the CBA instead. That's right, and maybe Schwartz... The CBA would require him to do what? To bring a grievance? Yes, we think that... ...remedies before he goes into court. Yes, exhaust contractual grievance remedies, and we also have a substantive argument, which he can't have a claim for morally modifying a contract or for unjust enrichment when a valid and enforceable contract comprehensively governs the subject matter of the dispute among the parties, as is the case here. And if the panel has any questions on the FLSA claim, it's Schwartz's own sworn testimony that clearly establishes that he's exempt under one or more grounds, and that testimony was as clear as were his unexplained direct contradictions that he offered in opposition to summary judgment, trying to dispute nearly every material thing he said. And Judge Menasche, you were asking some questions sort of characterizing Schwartz's argument as being, well, he was just doing data entry, but Schwartz's testimony tells a different story. He was the one who introduced the phrase, I was the lead project analyst, and he explained it because he frequently met with officials. He directly advised the DDC Assistant Commissioner almost daily. He prepared PowerPoints for her, or presentations for her, that she would deliver to other high-level stakeholders overseeing the process. If he was just some data entry clerk, it's hard to believe that he would be meeting with City Hall. I mean, do you agree that if he was just doing data entry, he would not be exempt? But if he has discretion over how to do the reports and present them and so on, then he's exempt. Is that the dispute? I think that's the correct dichotomy. It's between the exercise of discretion. So like if you are an accountant at the business, you are not exempt, but if you're the director of accounting and you can decide how all the accounting procedures are done, then you're exempt, right? It's the kind of discretion over how you do something that is related to management. Yeah, I think the discretion, I actually think the accountant might be exempt too, and that's where Schwartz finds himself, because contrary to... He's the accountant who's just doing... I think so, because it's about its non-ministerial. It involves some discretion and judgment, and that's what Schwartz testified to here, because contrary to what counsel said, he says directly, I designed several Excel workbooks. He used those Excel workbooks to compile a report with 20 different metrics. It took 30 to 60 minutes sometimes to run that report. This idea that it's just entering one or two numbers and doesn't involve some discretion in the presentation of that and the fact that he himself said we went from crude Excel spreadsheets to sophisticated data tracking systems... I mean, what is it about discretion? I mean, it talks about discretion and independent judgment, and you're saying, well, even if the discretion just involves how to present the results of some data calculation... Data design, data analysis, data presentation, and that's what he testified to here. That would be enough. Yes. So even an accountant who's just inputting numbers, and you might think of as ministerial, because he has to present the numbers to somebody, he has discretion. I think he has discretion because the way that you calculate numbers, there's different ways of accounting methodology. Who doesn't exercise discretion in independent judgment? I mean, I think there's... There's separate requirements, right? So you have to be directly related to management or general business operations, but then also have discretionary independent judgment. So someone's primary duty might not be just that exercise of discretion in independent judgment. They might not work on matters of significance. They might be below the salary threshold, and they might be doing a purely manual labor job as opposed to an office job, and all those things are in a different category than exempt. No, I know. I understand that you could be doing a manual labor job as opposed to... I'm saying that there must be some category of people who are doing work that's directly related to management or general business operations who do not exercise discretionary independent judgment. Yes. If there were no such category... A typist, maybe. Then the thing would be redundant. So think about maybe partners back in the day when they would ask an assistant to type up their briefs. I think that would be something purely ministerial. Right. So, in fact, the regulations have an example of somebody who's an executive assistant to a manager, and they only are exempt if they're given discretionary responsibilities, but not if they just act as an assistant and schedule things and do things that are ministerial. Yeah, I think that's correct, and that's what Short's testimony bears out. And the last point I'd just like to make... So Short's testimony bears it out. Why? Because he's doing data design and data presentation. That's right. And, you know, I understand... Do you agree with the characterization that he made himself sound more important, but his supervisors regarded him as more of a functionary? That's a red herring because Short's doesn't actually point to any testimony from either Flaherty, Kenney, or Haik, the three people who worked with him, that contradicts anything he said while questioned under oath at his deposition by the city's attorney. Rather, each of them actually spoke to the critical work that they relied on Short's for. Flaherty said his development of various analysis tools that helped DDC further understand what some of the key risks and challenges were was critical. Kenney said that Short's was the point person on building out the system to track very complicated information with respect to 1,500 homes. Haik said that Short's analyzed data and created meaningful reports for a multi-billion dollar program to chart its progress and see how it was doing. This is just not the stuff of someone who was doing ministerial data entry and he clearly, you know, spoke with pride about the discretion and independent judgment that he worked with when he was questioned under oath, and now he wants to deny all that when he's faced with a summary judgment motion. This court should affirm across the board. Thank you. Thank you, counsel. Mr. Shorts, you're reserved three minutes. Your Honors, the CBA argument is another red herring because if you look at the complaint, the complaint doesn't mention the CBA, doesn't say it arises under contract. That's A15 to A23. You won't find the word collective bargaining agreement, contractual rights, one time in there. It wasn't even clear it arose under whatever contract he was working under, but it's not in there. It's not alleged. In the motion to dismiss, there was no contract referred to. There was no contract referred to in the pleadings that the court could look at. There was no argument made about collective bargaining agreement in the district court by the city when they made their motion. They raised it for the first time on appeal. They raised it for the first time in their opposition brief. That's the first time the collective bargaining agreement even came into play. The collective bargaining agreement did come up in the course of the deposition and was included in the record in the summary judgment complaint, the summary judgment on the FLSA. I actually have that argument. I guess I'm more interested in the other one. So the point about the administrative code saying it has to be set by statute, the city says, well, the city council could have written any hours authorized by statute, right? So why shouldn't we read it to be limited to hours that are set directly in a statute? Because the state law allows the claim isn't under the administrative code. The claim is what was derived from state law, which is the personal rules and regulations, which we also refer to in the complaint. Yeah, but if the city council wanted to say, well, we only think that this regulation, this statute should apply when the hours are set by statute, and if they're set by some other means, then we don't want to enforce them in this way. I mean, the city council could do that, right? The city council could do that, yes. There is no state law about public employees and when they get overtime. There isn't. I've been through this many times. But there are regulations, there are personnel rules, there are practices, there are manuals, and, in fact, most state and city employees work a 35-hour week, not a 40-hour week. They don't get time and a half between 35 and 40. They get straight time. And then here, we're not even talking about banking. We're not talking about earning overtime. We're talking about he worked 39 hours one week and he didn't. I guess just before we run out of time, I also wanted you to address this question about having discretion. So he, in fact, I think it's hard to dispute that he has some discretion over how the data analysis is done and how it's presented in reports and so on. Is that not enough discretion to say that he exercises some independent discretion and judgment? Well, we do cite to Hawk and Kenny's testimony. Mr. Hawk said he collects information from the field, puts data into one big report, attends meetings, and attends meetings to present the reports. So he's asked, we would like to know X, Y, Z. They give him a bunch of categories. We want the information collected, how much we're spending on each building, what's the average, how much for concrete, how much for gravel, how much for electricians, whatever it is. They're rebuilding houses. That's what it was about. We want this information put in a report, and we want to be able to see how all of those different things are being affected by our program. All right. So just that request, doesn't that call for the exercise of some discretion? So if he says, I want a report that shows me all of these inputs and how much is being spent on all of these things across all our activities around the city, does he then figure out how to present that data to the people who want to see the reports? He has to figure out how to collate all the data and then how to present it, right? This is about decision makers. I mean, otherwise, the person that works in the token booth in the subway, if they decide to let somebody in, you know, without a, is that, are they then discretionary, making discretionary decisions about, and then they're excluded? Well, I don't know if taking the tokens is directly related to management or general business operations, but accounting, auditing, quality control, advertising, like all of these things that seem similar to what he's doing are specifically enumerated as directly related to management or general business operations. But he's not making the decisions about what to do. If you issued a decision that said that here, you would exclude 90 percent of the workforce in the city from FLSA coverage, or 90 percent of the workforce in the country, because people have discretion. They say, a boss says, do this job, and they have to decide, should I go this route or that route? Should I go to this street first or that street first? If they make a decision, does that make them a decision maker over something? Even the secretary that the council refers to might decide, should I footnote it this way or that way? Is that a decision? That's what the boss gives them a brief and says- Well, in fact, the regulations in 29 CFR 541-203 says, as an example of somebody who qualifies for the administrative exception, is an executive assistant or administrative assistant to a business owner or senior executive of a large business, generally meets the duties requirements for the administrative exception of such employee, without specific instructions or prescribed procedures, has been delegated authority regarding matters of significance. I understand that's a little vague, but it does mean that an executive assistant, as long as they're doing some kind of delegated authority, meets the exception. So it's not about somebody being higher up in the hierarchy. It's about the nature of the work that they do. But he's not an executive assistant. The first part of it, he was called a project management intern, and the second part, he got a raise to $65,000, and he was called data analyst. He wasn't an executive assistant to anyone. And I do want to just come back to this CBA claim, which we spent a lot of time on. It's not, it's not, and in this court's decision in Nakahata, the same, well, it was the Presbyterian Healthcare System. This court said, we do not consider matters outside the pleadings in deciding a motion to dismiss. There was a CBA claim made here, right? They say, rather, the matter outside the pleadings is offered on a motion for summary judgment. As indicated by the word shall, the conversion, you have to convert it to a summary judgment. It wasn't raised, it wasn't in the record. It wasn't considered. It wasn't raised by the city, and for them to raise it on appeal is entirely inappropriate, and it was never asserted, and this court has said, you can't throw a CBA claim into a, that was a Wage and Hour, it was an FLSA case. You can't throw that into the mix when you didn't do it on the motion to dismiss. So why, why the city's grounding itself in that now is only because there's no merit to its position. Because even if we can't establish, even, Judge, even if we don't have the administrative, if the administrative code somehow doesn't apply, and what DDC was doing was entirely illegal, or was entirely not authorized by law, and they have 10,000 employees, and they're doing something not authorized by law, we do have a claim for oral contract. We do have a claim for unjust enrichment, which this court in Nakahata said, if we don't have a good statutory claim, you have a claim, we, we, you remanded for consideration of those common law claims in that particular case, and the city's argument below and the decisions below were, you have to bring those by Article 78 within four months of when you, the last time you were in pain. And the city has conceded here that that ruling was improper. So whether or not, whether or not the administrative code allowed it, or state law allowed it, and we have claims here, we didn't just bring a claim under the personnel rules and regulations. We brought a quantum error, we brought an unjust enrichment, we brought an oral contract claim, and those were dismissed separately on this ruling saying that Finley applies, and you have to have filed an Article 78. The city has conceded that that's wrong, which is why they brought in the CBA claim, the CBA assertion, which never came up, because they're conceding that the court decision below on those, on those three causes of action, those three state law, common law causes of action was wrong. And just on that basis alone, it should be remanded to the district court to, frankly, not just to reconsider the motion to dismiss, but to grant judgment on the pleadings. Thank you very much. Thank you, counsel. The last case on the calendar for today is on submission, so that concludes our business for today. I'll ask the courtroom deputy to adjourn. Court is adjourned. Thank you.